**Donald G. HARGIS, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant–Appellee.**

No. 90–6188.

United States Court of Appeals, Tenth Circuit.

Oct. 4, 1991.

---

Eric G. Melders, Oklahoma City, Okl., for plaintiff-appellant.

Rodney A. Johnson, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, Dallas, Tex. (Timothy D. Leonard, U.S. Atty., and Eleanor Darden Thompson, Asst. U.S. Atty., W.D. Okl., Gayla Fuller, Chief Counsel, and Karen J. Sharp, Chief, Social Sec. Branch, Office of Gen. Counsel, U.S. Dept. of Health and Human Services,

Dallas, Tex., with him on the brief), for defendant-appellee.

Before McKAY, Chief Judge, and ALDISERT[1] and McWILLIAMS, Circuit Judges.

McKAY, Chief Judge.

Mr. Donald G. Hargis appeals from an order of the district court affirming the denial of his application for disability insurance and supplemental security income benefits by the Secretary of Health and Human Services under Title II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423, 1381. Mr. Hargis complains that the decision of the Secretary is not supported by substantial evidence.

## I.

Mr. Hargis suffered a back injury on April 30, 1985, while he was employed as a long-haul truck driver. He was hospitalized and received treatment for his injury around that time. On April 27, 1987, he complained of an increase in back pain and sought further treatment. Dr. Stan Pelofsky, a neurosurgeon and the appellant's treating physician, noted that Mr. Hargis stated he experienced a "great degree of back pain and lower extremity radicular pain." Record, vol. 2, at 161. Dr. Pelofsky believed Mr. Hargis was a candidate for hospitalization and a lumbar myelography. Mr. Hargis then was admitted into St. Anthony Hospital through the emergency room on May 18, 1987, upon his complaints of excruciating back pain radiating to his left leg and numbness. At that time, Dr. Pelofsky recommended that Mr. Hargis undergo a myelography, to which the patient agreed. Mr. Hargis also underwent postmyelographic CT scanning and evaluation of cerebrospinal fluid. The results, in Dr. · Pelofsky's opinion, did not reveal evidence of a surgical lesion. Dr. Pelofsky concluded that Mr. Hargis suffered from degenerative lumbar disc disease made symptomatic or aggravated by his employment as a truck driver and discharged petitioner to a regimen of conservative therapy. The treating physician noted that because his job was the source of his medical problems, Mr. Hargis would have to change his employment.

Mr. Hargis nevertheless attempted to return to his previous job as a long-haul truck driver. He hitched a ride as a passenger in a tractor-trailer rig to determine whether his back could sustain the stress placed on it by the rigors of travel. He was forced to terminate the trip before he reached his destination and flew home. On November 19, 1987, Dr. Pelofsky reported that Mr. Hargis had exacerbated his cervical pain and left arm radicular pain syndrome. Dr. Pelofsky once again recommended that Mr. Hargis not continue his employment as a truck driver. He nevertheless felt that the patient would be an excellent candidate for vocational rehabilitation.

Mr. Hargis filed applications for disability and supplemental social security benefits on September 18, 1987. The claimant alleged disability since May 18, 1987, due to pain in his lumbar back region. After his applications were denied initially and on reconsideration, Mr. Hargis requested a hearing de novo before an administrative law judge. With the aid of counsel, Mr. Hargis, an examining psychiatrist, and a vocational expert testified at the administrative hearing on June 30, 1988.

At the time of his disability hearing, Mr. Hargis was forty-six years old and had obtained a high school education. His past relevant work was as a truck driver and farmer. Mr. Hargis testified that in addition to his back problems, he has had two neck surgeries, one in 1980 in which a disc was removed, and another in 1983. He underwent physical therapy for over a year, and was treated with a TENS unit for approximately three months. Mr. Hargis also participated in an exercise program at a local hospital for approximately seven months, until he could no longer afford it.

---

1. Honorable Ruggero J. Aldisert, United States Senior Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

He now walks to a convenience store that is around 200 yards from his home twice a day. He testified that he could lift approximately five pounds and drives his pickup into town twice a week. Although Mr. Hargis was able to sit throughout his testimony at the proceeding, at one point his arm began to quiver due to the pain in his back. When asked whether he had attempted to find lighter work, the claimant replied: "Sir, I'm in so much pain, I don't know what I could concentrate on doing." Record, vol. 2, at 41. At the conclusion of the proceeding, the administrative law judge referred the claimant for further psychological and psychiatric testing.

After considering the testimony and evidence submitted by Mr. Hargis and the reports supplied after Mr. Hargis underwent further psychological evaluation, the administrative law judge found that the claimant suffered from chronic lumbosacral strain and depression. The administrative law judge nevertheless found that those ailments did not render Mr. Hargis so disabled that he could not engage in substantial gainful activity and denied his application for social security disability payments.

The Appeals Council denied Mr. Hargis' request for review, rendering the decision of the administrative law judge the final decision of the Secretary. 20 C.F.R. §§ 404.981, 416.1481 (1989). The district court found that the Secretary's findings were supported by substantial evidence. Mr. Hargis now brings this appeal.

To qualify for disability benefits, the claimant must establish a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(c)(1)(A) (1988). The Secretary has established a five-step sequential evaluation process for determining disability. *See* 20 C.F.R. §§ 404.1520, 416.920 (1990). The first two steps, that the claimant is not presently engaged in substantial gainful activity and that he suffers from a medically severe impairment or combination of impairments, are not at issue. Mr.

Hargis' complaint is with the Secretary's findings in the third and fifth steps of the sequential evaluation process. The Secretary found that Mr. Hargis' impairments are not found on or medically equal to the Secretary's list of impairments conclusively presumed to be disabling. 20 C.F.R. § 404, Subpt. P, App. 1 (1989). While the Secretary found that Mr. Hargis is unable to return to his past relevant work as a truck driver, the fourth step in the sequential evaluation process, he determined that the claimant had the residual functional capacity to perform other work in the national economy in view of his age, education, and work experience. He therefore denied the claimant's application for social security disability. *See generally Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Mr. Hargis complains that the Secretary erred when he did not find that his mental impairments precluded him from performing even sedentary work. He also takes exception to the Secretary's finding that, despite his impairments, Mr. Hargis could perform work in the national economy other than his previous employment. Mr. Hargis asserts that, due to his back ailments and attendant pain along with his psychological impairment, the Secretary's finding is not supported by substantial evidence. He finally proffers medical evidence not available at the earlier proceedings and asks this court to remand the cause for further proceedings in light of this new evidence. We address, in turn, each of Mr. Hargis' claims.

■ This court reviews the Secretary's decision to determine only whether his findings are supported by substantial evidence and whether the Secretary applied correct legal standards when making his decision. *Williams v. Bowen*, 844 F.2d 748 (10th Cir.1988); *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir.1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir.1985). We cannot reweigh the evidence or substitute our judgment for that of the Secretary. *Jordan v.*

*Heckler,* 835 F.2d 1314, 1316 (10th Cir. 1987); *Brown v. Bowen,* 801 F.2d 361, 362 (10th Cir.1986).

## II.

The Secretary has promulgated a special technique to ensure that all evidence needed for the evaluation of a claim which involves a mental impairment is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a (1990).[2] Mr. Hargis challenges the Secretary's use of that procedure when finding that he does not suffer from an affective mental disorder that precludes him from performing even sedentary work. He submits that the severity of his depression meets the Secretary's listings under section 12.04. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.04 (1990). Such a finding would establish that the claimant is presumptively disabled without consideration of the vocational factors relevant to the claimant's other arguments. *See* 20 C.F.R. § 404, Subpt. P, App. 1 (1990).

Section 12.04 sets out a two-part test that must be met before a claimant may be found to suffer from a disabling mental disorder. The administrative law judge found that the claimant met the first prong of the test, which establishes a loss of specific cognitive abilities or affective changes: depressive syndrome characterized by sleep disturbance, decreased energy, feelings of guilt or worthlessness, and thoughts of suicide. The second prong requires that the condition result in at least two of the following:

> 1. Marked[3] restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
> 4. Repeated episodes in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. § 404, Subpt. P, App. 1, § 12.04 B. The first two categories are rated on a five-point scale: none, slight, moderate, marked, and extreme. The third category is rated: never, seldom, often, frequent, and constant. Finally, the fourth category is scaled: never, once or twice, repeated, and continual. 20 C.F.R. § 404.1520a(b)(3) (1989).

According to the evaluation filled out by the administrative law judge, the claimant did not meet the required level of severity for any of the four criteria in the listings.[4] Mr. Hargis argues that the evidence of record overwhelmingly contradicts the administrative law judge's finding.

At the hearing, the administrative law judge heard testimony from Dr. Vinekar, a psychiatrist who examined Mr. Hargis. Dr. Vinekar diagnosed the claimant as suffering from moderate depression. The psychiatrist noted that Mr. Hargis exhibited a moderate degree of restriction of activities of daily living and in maintaining social

---

2. For an overview of the history of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1801, see *Shepard v. Sullivan,* 898 F.2d 1267 (7th Cir.1990).

3. "Where 'marked' is used as a standard for measuring the degree of limitation, it means more than moderate, but less than extreme. A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(C) (1989).

4. The administrative law judge evaluated the claimant's restrictions of activities of daily living and difficulties in maintaining social functioning as "moderate." He found that the claimant "seldom" suffered from deficiencies of concentration or persistence of pace resulting in failure to complete tasks in a timely manner. Finally, the administrative law judge found that the claimant "never" suffered episodes of deterioration or decompensation in work or work-like settings which caused him to withdraw from the situation or to experience exacerbation of signs and symptoms. Record, vol. 2, at 21.

functioning. He concluded that appellant suffered from frequent deficiencies of concentration, persistence, or pace and repeated episodes of deterioration in work or work-like settings. The psychiatrist finally ventured that the claimant's symptoms met the requirements of section 12.04. The record includes a Psychiatric Review Technique Form filled out by Dr. Vinekar reflecting his position. Record, vol. 2 at 214.

At the request of the Secretary, appellant underwent further psychological and psychiatric testing after the administrative hearing. Elizabeth R. Rasmussen, Ph.D., a psychologist, interviewed Mr. Hargis and administered to him the Wechsler Adult Intelligence Scale, Revised. Mr. Hargis also was evaluated by Marcus S. Barker, M.D., a psychiatrist. Unfortunately for purposes of our review, however, the forms Dr. Rasmussen and Dr. Barker filled out in Mr. Hargis' behalf do not match the four requirements of section 12.04 B.

Dr. Rasmussen diagnosed the claimant as suffering from moderate depression bordering on severe depression. He received scores placing him in the "low average" range of intelligence. The psychologist determined that Mr. Hargis had the capacity to make personal and social adjustments, although he had difficulty with concentration due to his physical discomfort. On a scale of one to four, the psychologist rated the claimant's ability to maintain attention and concentration as only a two. His ability to relate to coworkers, deal with the public, and deal with work stresses, however, were rated as a three.

Dr. Barker believed Mr. Hargis suffered from a rather severe neurotic depression. The psychiatrist noted that the claimant could follow simple job instructions, but believed that he could not behave in an emotionally stable manner. While he concurred in Dr. Rasmussen's conclusion that the claimant could relate with others well, Dr. Barker found that his ability to deal with work stresses and maintain attention and concentration was only "fair." Record, vol. 2, at 236. He also found that the claimant had no ability to carry out detailed instructions and had only a "fair" ability to understand, remember, and carry out simple job instructions.

Needless to say, each specialist painted quite a different picture of Mr. Hargis' emotional impairment. Given the remarks of the two psychiatrists and one psychologist, it is clear that Mr. Hargis suffers some emotional impairment. The evaluations submitted by the three experts, moreover, gravely call into question the administrative law judge's ratings of the four elements listed in the provision. Because each expert felt Mr. Hargis' deficiencies resulted in behavior reflecting different elements listed in section 12.04 B, however, we must conclude, given our very limited scope of review, that the administrative law judge's conclusion that Mr. Hargis does not meet the listing requirement is supported by substantial evidence.

That Mr. Hargis' psychological impairment did not meet the Secretary's listing, however, should not have ended the Secretary's inquiry. The "pertinent findings and conclusions" based on the evaluation of the claimant's mental impairments must be incorporated into each adjudicative level. 20 C.F.R. § 404.1520a(c)(4). Particularly, once a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment, the fifth step in the sequential evaluation process.[5] 20 C.F.R. § 404.1520a(c)(3). We therefore turn now to the claimant's exceptions to the Secretary's finding in this stage of the evaluation process.

---

5. The Secretary's regulations indicate:
 If the four areas considered by us as essential to work have been rated to indicate a degree of limitation as *none* or *slight* in the first and second areas, *never* or *seldom* in the third area, and *never* in the fourth area, we can generally conclude that the impairment is not severe, unless the evidence otherwise indi-

cates there is significant limitation of your mental ability to do basic work activities.
20 C.F.R. § 404.1520a(c)(1). Though the regulations do not indicate that a rating higher than those listed are to be considered severe, we believe that such an inference must be drawn absent any indication to the contrary.

### III.

The burden of proving a disability within the meaning of the Social Security Act rests with the claimant. 42 U.S.C. § 423(d)(5) (1988). "Once the claimant makes a prima facie showing of disability that prevents his engaging in his prior work activity, however, the burden of going forward shifts to the Secretary, who must show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984). Mr. Hargis takes exception with the Secretary's finding that his back ailment does not preclude him from performing sedentary work. He submits that the pain he suffers, alone and in combination with his depression, renders his back ailment disabling.

### A.

"[P]ain testimony should be consistent with the degree of pain that could be reasonably expected from a determinable medical abnormality." *Huston v. Bowen,* 838 F.2d 1125, 1129 (10th Cir.1988); 42 U.S.C.A. § 423(d)(5)(A) (1988). "[I]f an impairment is reasonably expected to produce *some* pain, allegations of *disability* pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." *Luna v. Bowen,* 834 F.2d 161, 164 (10th Cir.1987) (emphasis in original). Mr. Hargis points to the consistent notations of his reported pain on almost every medical review contained in the record. At the hearing, Dr. Vinekar testified that he believed Mr. Hargis' reports of pain were genuine.

The administrative law judge concluded that Mr. Hargis' complaints of pain were indeed valid. He nevertheless found that in light of all of the other relevant evidence, Mr. Hargis' complaints of disabling pain were not credible. In his evaluation, the administrative law judge relied heavily on a report submitted by Mr. Hargis dated November 19, 1987, from Dr. Stan Pelofsky, his treating physician. Dr. Pelofsky stated that Mr. Hargis' chronic cervical strain syndrome was exacerbated by his recent attempt to return to work. He recommended that the patient continue a conservative therapy program. Dr. Pelofsky felt that Mr. Hargis would not be able to return to his previous employment as a truck driver, but felt that his patient would make an "excellent candidate for vocational rehabilitation." Record, vol. 2, at 213. The administrative law judge read the report of the claimant's treating physician as demonstrating that the pain he suffered was not disabling.

This court, in *Huston v. Bowen,* 838 F.2d 1125 (10th Cir.1988), set out certain factors an administrative law judge should take into consideration when considering the credibility of pain testimony.

Some of the possible factors include: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1132.

A review of the administrative law judge's opinion confirms that the Secretary took into account many of these factors when evaluating Mr. Hargis' claim. The medical reports, while evidencing some narrowing of the L5–S1 disc space and some degenerative disc changes associated with aging, did not reveal any evidence of a herniated disc. Although the record evidences the claimant's repeated attempts to undergo treatment to rid himself of pain, the claimant's testimony appears to support a conclusion that he had not regularly taken the pain medication prescribed by his physician. In addition, the assessment by the claimant's treating physician that he was an excellent candidate for rehabilitation does support an inference that the claimant does not suffer from completely disabling pain. "Unless good cause is

shown to the contrary, the Secretary must give substantial weight to the testimony of the claimant's treating physician." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Despite the repeated notations demonstrating that the claimant suffers from pain, we nevertheless find that the opinion of the administrative law judge, after giving full consideration to all relevant facts, is supported by substantial evidence. We note that we base this conclusion only from the evidence that was before the administrative law judge at the time he made his decision.

### B.

Our review does not end, however, with our determination that the administrative law judge's decision that the claimant does not suffer from disabling pain is supported by substantial evidence. The Secretary must demonstrate that sufficient jobs exist in the national economy that the claimant may perform given the level of pain he suffers.

The Secretary has promulgated medical-vocational guidelines (the grids), *see* 20 C.F.R. § 404, Subpt. P, App. 2 (1990), to help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations. The grids should not be applied conclusively in a particular case, however, unless the claimant could perform the full range of work required of that category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range. *Channel v. Heckler*, 747 F.2d 577, 580 (10th Cir.1984). Moreover, resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments.[6] *Id.* at 580–81. The grids may serve only as a framework to determine whether sufficient jobs remain within a claimant's range of

residual functional capacity. *Huston*, 838 F.2d at 1131.

The administrative law judge, therefore, instead relied on the testimony of the vocational consultant who appeared at the administrative hearing. She testified that the claimant acquired skills in his prior work as a truck driver that would transfer to a dispatcher position. The vocational consultant also offered her opinion that the claimant's prior skills as a farmer could be transferred to a position as an animal shelter clerk. Both jobs identified by the vocational consultant are classified as semi-skilled, sedentary work. The following colloquy was the only mention in the vocational expert's testimony of nonexertional impairments:

Q. [Claimant's Attorney] If we were to again look at this man, say the way he appeared here, that he's got pain when he sits for any length of time, and if I were to say that just two hours was the maximum he could sit, then he'd have to either lay down or leave the work situation, would that make it difficult or impossible for him to actually perform either of these occupations?

A. If he had to—to lie down or leave, yes, it could interfere with his work performance.

Q. Okay. Pain would be—if he genuinely had pain, would be an obstacle to the performance of either these occupations; pain the way I've described it?

A. Yes.

Q. Okay. I have no further questions, Judge.

ALJ: What if he could stand up?

VE: If he could stand up and move around at the job, and circulate a little bit, and then continue the job, it wouldn't interfere with the—I was responding to the having to leave the work place—.

Record, vol. 2, at 86.

Though this inquiry is limited, we believe the Secretary sufficiently took into account the claimant's complaints of pain when

---

**6.** Though pain may reflect exertional limitations, the claimant's irritation while riding in or driving a truck could be characterized as nonexertional. *See Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir.1988) (testimony that claimant experienced pain while riding on a tractor evidenced nonexertional impairment).

evaluating whether there existed sufficient jobs in the national economy in which the claimant could work.

### C.

The claimant next asserts error because the administrative law judge did not correctly evaluate his mental impairment in combination with the effects of the pain he suffers. We agree and reverse on this ground.

We begin with the administrative law judge's finding regarding the claimant's mental impairment:

> The Administrative Law Judge has considered not only the claimant's exertional limitations, but also the depression secondary to his physical impairment. Signs and symptoms of depression would be expected to exacerbate if the claimant was forced to return to his past work or otherwise exceed his exertional capacity. However, so long as the claimant does not exceed exertional requirements for sedentary work, his ability to perform such jobs would not be significantly affected by nonexertional limitations. The vocational expert's testimony revealed, for example, that although mental demands on a dispatcher were somewhat greater than mental demands on a trucker, the claimant has operated in a job with transferable skills to that of a dispatcher, and only moderate adjustment would be required. The medical assessment of ability to perform work-related activities forms prepared by Dr. Rasmussen and Dr. Barker show the claimant has retained at least "fair" ability in all measured areas and "good" ability in most.

Record, vol. 2, at 17.

 Pursuant to Congress' mandate, the Secretary must consider the combined effects of impairments that may not be severe individually, but which in combina-

tion may constitute a severe medical disability. 42 U.S.C. § 423(d)(2)(C) (1988). The Secretary's regulations indicate that "[t]he determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorders are not met or equaled but the impairment is nevertheless severe." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A). The Secretary, pursuant to his own regulations, cannot therefore dismiss a claimant's mental impairment once there is a finding that the claimant does not meet the listings. A claimant's mental impairment must also be evaluated in combination with the effects of other impairments.[7]

 Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy. *Channel,* 747 F.2d at 580. A severe mental impairment is such a nonexertional impairment. *Wheeler v. Sullivan,* 888 F.2d 1233, 1238 (8th Cir.1989). Yet the administrative law judge did not present to the vocational expert any difficulties manifested by the claimant's mental impairment. Nor did the administrative law judge's questions relating to the claimant's ability to transfer skills include the possibility of problems arising from his existing mental impairment—comparison of mental demands required for a job does not effectively aid evaluation of a claimant's depressive disorder absent evidence that the disorder is caused or exacerbated by increased mental demands. Finally, the vocational expert was not even apprised of the claimant's depression to determine whether his ailment would affect his performance in the two jobs proffered by the vocational expert regardless of whether the claimant would suffer transitional prob-

---

**7.** The comment by the treating physician that the claimant would be a good candidate for vocational rehabilitation provides us no support for the Secretary's conclusion in this area. Medical reports which consider only physical impairments cannot amount to substantial evi-

dence that the claimant can perform sedentary work when the claimant is found to suffer from both physical and psychological impairments. *Beecher v. Heckler,* 756 F.2d 693, 694–95 (9th Cir.1985); *Dressel v. Califano,* 558 F.2d 504, 508 (8th Cir.1977).

lems. "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir.1990).

We nevertheless have held previously that a vocational expert may be called for the limited purpose of determining whether the claimant's skills acquired during past work would transfer to a category containing the exertional level the administrative law judge has concluded the claimant could perform. *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir.1987). The administrative law judge found that Rule 201.22 of the grids, which assesses jobs in the national economy available to a claimant whose exertional limitations allow the claimant to perform sedentary work, most closely coincides with the claimant's residual functional capacity. Formal application of this rule is possible, however, only when the full range of activity for the rule is not limited by the combined effects of the claimant's nonexertional impairments. *See Channel*, 747 F.2d at 582 n. 6.

The administrative law judge's failure to recognize any mental impairment affecting the claimant's ability to perform sedentary work is, in our estimation, not supported by substantial evidence or correct legal standards. In assessing the claimant's residual functional capacity, the administrative law judge did not sufficiently take into account the claimant's depression once he found that the claimant did not meet the listings criteria for mental disorders. For example, the administrative law judge's conclusion that the claimant's depression would only be exacerbated if the claimant exceeded exertional limitations did not acknowledge the claimant's current level of depression. That the claimant did not meet the listing requirement under section 12.04 does not preclude the possibility that his existing impairment was so severe that the claimant could not effectively perform the proffered employment. *See supra* at n. 4. Moreover, that the claimant quit his past employment as a truck driver because of the pain he suf-

fered due to injury does not discount the impact of the claimant's depression on his ability to perform other work. The psychological and psychiatric evaluations evidence the claimant's deficiency in concentration and performance in a social setting, and the psychologist to which the administrative law judge referred the claimant indicated that he could not even behave in an emotionally stable manner. These evaluations were conducted not while the claimant was employed as a truck driver but at a time when his exertional activities were extremely limited. Any supposition that claimant could engage in the full range of occupations represented by the applicable grid, therefore, is not supported by substantial evidence.

We therefore must conclude that the Secretary's conclusion that the claimant retains the ability to perform the jobs of dispatcher and animal shelter clerk is not sufficiently supported by the record. Because the administrative law judge apparently relied on his assessment that the claimant could perform the full range of sedentary work, he did not present claimant's mental impairment to the vocational expert. We remand the case to the Secretary for a determination whether the combined effects of Mr. Hargis' nonexertional impairments warrant a finding of disability. Such a finding would require support from a vocational expert. *See Wheeler*, 888 F.2d at 1238 (once claimant establishes existence of severe mental impairment that does not meet the listings, Secretary must use vocational expert testimony or other similar evidence to meet his burden of showing claimant can perform jobs available in the national economy); *compare Ortiz v. Secretary of Services*, 890 F.2d 520, 526–28 (1st Cir.1989) (Secretary's exclusive reliance on grid supportable on limited facts, but Secretary generally should rely on testimony of vocational expert when claimant suffers from mental impairment).

## IV.

Mr. Hargis finally submits additional medical evidence to this court that was not

available at the administrative hearing or before the district court. He argues that, in light of this new evidence, the cause should be remanded to the Secretary for a new determination. 42 U.S.C. § 405(g) (1988). Section 205(g) of the Social Security Act states:

> The court may ... at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

42 U.S.C. § 405(g) (1988).

■ In order to find a remand appropriate, we normally must determine that the new evidence would have changed the Secretary's decision had it been before him. *Cagle v. Califano,* 638 F.2d 219, 221 (10th Cir.1981). Implicit in this requirement is that the proffered evidence relate to the time period for which the benefits were denied. *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir.1985). Because we remand this case for further evaluation of the claimant's combined nonexertional impairments, however, we believe it appropriate that the Secretary initially determine whether these additional medical evaluations significantly alter his initial determination.

The judgment of the district court is REVERSED and the proceedings REMANDED with a direction that the district court remand the cause to the Secretary for review of the combined effect of Mr. Hargis' nonexertional impairment and further evaluation after consideration of the additional medical evidence submitted on appeal.