54 F.3d 787
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Josephine G. CRITTENDEN, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
[1] Defendant-Appellee.
 No. 94-5159.
 D.C. No. 93-C-131-B.
 United States Court of Appeals, Tenth Circuit.
 May 10, 1995.
 
 Before HENRY, McKAY, and LOGAN, Circuit Judges.
 
 ORDER AND JDUGMENT[2]
 McKAY
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Claimant Josephine Crittenden appeals the district court's judgment affirming the Secretary of Health and Human Service's decision denying her application for social security disability benefits. An administrative law judge (ALJ) denied benefits at step five of the disability evaluation. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988) (explaining five steps). On appeal, claimant argues that the ALJ improperly evaluated her residual functional capacity to work despite her impairment and erred in questioning the vocational expert.
 
 
 3
 Our review is limited to determining whether the Secretary applied the correct legal standard and whether her findings are supported by substantial evidence. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir.1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. This court "cannot reweigh the evidence or substitute our judgment for that of the Secretary." Id.
 
 
 4
 Claimant is a forty-seven year old woman with an eighth grade education. She filed an application for disability insurance benefits in 1991, alleging she has been unable to work since December 20, 1989. On that date, an elbow injury prevented her from returning to her job as manager of the pet department at Walmart, where she had worked for more than ten years. The injury occurred four months earlier when claimant fell at work. She developed significant lateral epicondylitis, "[a] strain of the lateral forearm muscles ... or their tendinous attachments near their origin on the lateral epicondyle of the humerus." The Merck Manual 1368 (Robert Berkow & Andrew J. Fletcher eds., 16th ed.1992). The condition caused significant pain. Appellant's App., Vol. II at 219, 237-41. Doctors Stinnett and Stanley advised claimant not to use her right arm at work. Id. at 219. They also treated her with conservative measures, which included bracing, corticosteroid injections, physical therapy, and anti-inflammatory medication.
 
 
 5
 Her condition, though, did not improve. See id. at 145-46 (summarizing treatment); see also id. at 166 ("not improved;" "pain continued ... cannot use arm"); id. at 240 (pain with any use of arm). In Dr. Stanley's opinion, claimant's problem strictly involved the extensor tendon mechanism; there was no evidence of osseous pathology. Id. at 202. Dr. Stanley sent claimant to Dr. Peters to determine whether claimant needed surgery. Id.
 
 
 6
 On examination, Dr. Peters found "tenderness well localized to the anterior and lateral aspects of the lateral epicondyle of the humerus with pain extending into the extensor supinator forearm musculature." Id. at 160. Claimant had full rotation of the forearm, and no muscle atrophy. Id. She had "pain with strong grasp, with resisted extension of the wrist, and with passive flexion of the wrist when the elbow is in full extension." Id. The x-rays were unremarkable and the motor, sensory, and vascular exams of the hand were intact. Id. Dr. Peters diagnosed chronic lateral epicondylitis, unresponsive to all conservative treatment. Id. "Because of the significant discomfort and disability," id. at 161, claimant agreed to undergo surgery for extensor origin reconstruction.
 
 
 7
 After the surgery, Dr. Peters prescribed rehabilitation exercises, which included using one, two, and three pound dumbbells. Claimant could not perform the exercises six weeks after the surgery. Id. at 156. Two months after the surgery, she could lift the two pound dumbbell, but she reported pain with any lifting or carrying. Id. at 155. At that point, she had full range of motion, no swelling, but still some tenderness over the epicondyle. Id.
 
 
 8
 Three months after the surgery, however, claimant's condition worsened. Id. at 154. Claimant thought she may have worked too hard on her rehabilitation exercises. Id. Examination showed "tenderness in the proximal forearm extensor supinator musculature, especially with grasp and extension of the wrist. The epicondyle is less tender." Id. Dr. Peters advised claimant to "back away from ... exercises and return ... only to day to day activities." Id.
 
 
 9
 Four months after the surgery, claimant's condition further deteriorated. She reported pain "in the lower aspect of the upper arm, along the surgical site and in the proximal forearm." Id. at 151. Examination revealed "tenderness over the epicondyle of the extensor supinator musculature and the lateral lower arm." Id. There was also pain with resisted extension and passive flexion of the wrist and full extension of the elbow. Id. Claimant's grip strength was weak, her range of motion was unrestricted, and there were no signs of radial nerve entrapment. Id.
 
 
 10
 Claimant's condition did not improve in the following month. Five months after the surgery, she still had "significant pain in her forearm on an intermittent basis despite an attempt to moderate her activity." Id. at 149. She had full range of motion, but had pain with full extension of the elbow. Id. Dr. Peters was "frustrated by her lack of progress." Id. At that point, he had no intervention to offer, "despite continued restriction of activity and observation." Id.
 
 
 11
 Six months after the surgery, claimant still had "aching pain over the lateral aspect of her arm." Id. at 145. She could not "perform household activities such as vacuuming or sweeping." Id. She obtained some relief, though, from aspirin and her transcutaneous nerve stimulator (TENS unit). Id. Examination revealed that claimant had full range of motion, but had "pain with full extension, with strong grasp, or resisted extension of the wrist." Id. Claimant's grip strength did not register. Summarizing claimant's condition, Dr. Peters stated that claimant showed some initial improvement after surgery, but then "developed chronic discomfort which did not respond to further therapy." Id. Dr. Peters recommended that claimant "be retrained for a more sedentary occupation. She will be unable to do heavy lifting, squeezing, grasping, or repetitive activity with her right hand." Id. at 146.
 
 
 12
 At her disability hearing, claimant testified that she has almost no use of her right arm. She stated, "It's just there, it just hangs on the side and if I use it at all, if I try to lift it--it causes more pain." Id. at 48. She explained that the pain is in her elbow, shoulder, wrist, and palm. Id. at 49. She claimed to be in constant pain. Id. at 54. Sometimes the pain is so severe, she vomits. Id. at 59. Her TENS unit and pain pills ease, but do not eliminate, her pain. Id. at 53-54.
 
 
 13
 Claimant stated that she could not grip a screw driver, hammer, or spatula with her right hand. Id. at 55-56. She requires some help with personal hygiene. Id. at 50. Claimant explained that she has learned to use her left hand for many things. See id. at 50, 56. She does some cooking and light housework. Id. at 46. She also attends church twice a week and occasionally drives short distances. Id. at 48-49.
 
 
 14
 According to the ALJ, the medical evidence showed that claimant could not perform her past relevant work. The burden, at that point, shifted to the Secretary to " 'show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy.' " Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir.1992)(quoting Channel v. Heckler, 747 F.2d 577, 579 (10th Cir.1984)).
 
 
 15
 The ALJ concluded that claimant retained the capacity to perform sedentary work that does not require repetitive motion or gripping, excessive squeezing, grasping, or lifting more than two pounds with her right arm. A vocational expert identified two semi-skilled sedentary jobs that required lifting of no more than two pounds with the dominant hand. Based on the vocational expert's testimony, the ALJ determined that claimant is not disabled.
 
 
 16
 Claimant argues that the ALJ did not properly evaluate her complaints of disabling pain. In considering this argument, we examine "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir.1992).
 
 
 17
 The ALJ found that the objective medical evidence substantiated the elbow injury and corrective surgery, but did "not substantiate any continuing pathology" after the surgery. Appellant's App., Vol. II at 20. He discredited claimant's allegations of disabling pain, noting the complaints were "far in excess of what could reasonably be expected from this type of injury when all x-rays and diagnostic findings are normal. Notably, the claimant has full range of motion in the upper right extremity, no neurological deficiencies, and no evidence of any muscle atrophy." Id. at 19. The ALJ also viewed claimant's limited use of medication and daily activities[3] as inconsistent with disabling pain.
 
 
 18
 We hold that the record lacks substantial evidence to support the ALJ's conclusion that the objective medical evidence shows no continuing pathology after claimant's surgery. Dr. Peter's post-surgery notes plainly state that claimant initially improved after the surgery, but then she developed chronic discomfort that did not respond to treatment. Examinations during the six-month period after the surgery showed increased tenderness. When claimant experienced pain with her rehabilitation exercises, which included lifting one, two, and three pound dumbbells, Dr. Peters advised claimant to "back away" from the exercises. Nothing in Dr. Peter's subsequent notes suggests that claimant improved to the point that she was able to resume the exercises. Instead, the notes indicate that claimant continued to deteriorate. The ALJ gave no reasons, let alone "specific, legitimate reasons," Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir.1988), for rejecting Dr. Peter's assessment of claimant's condition.
 
 
 19
 Read in context, Dr. Peter's notes do not constitute substantial evidence that claimant can lift two pounds with her right hand. Nor is there medical evidence from other examining physicians indicating that claimant, after the surgery, could lift two pounds with her right arm. To the extent the ALJ concluded that claimant can lift two pounds, that conclusion is not supported by substantial evidence. On remand, medical evidence should be obtained from an examining physician regarding the functional limitations posed by claimant's condition. Claimant's credibility should be reevaluated in light of Dr. Peter's post-surgery notes and the additional medical evidence obtained on remand. Also, if the additional evidence shows that claimant cannot lift two pounds, the ALJ should obtain additional testimony from a vocational expert. The testimony already obtained from the vocational expert does not support the disability determination because the ALJ asked the vocational expert to assume claimant could lift at least two pounds with her dominant hand. See Hargis, 945 F.2d at 1491-92 (holding that hypothetical question must address all of claimant's impairments).
 
 
 20
 The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED and the case is REMANDED for further proceedings consistent with this order and judgment.
 
 
 
 [1]
 Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R.App. P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision
 
 
 [2]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [3]
 In support of his conclusion that claimant's daily activities are inconsistent with chronic pain, the ALJ noted that claimant "concentrate[d] well enough to work on writing a book" and drove "regularly." Claimant's actual testimony, though, was that she used to work on writing a book, but could no longer do so. Id. at 58. As for driving, claimant stated that she no longer drives, but she had, at times since her injury, driven one-quarter mile to her father-in-law's house. Id. at 48-49