**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GENEVA L. COWANS,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner
of Social Security Administration,

      Defendant-Appellee.

No. 98-5212
(D.C. No. 97-CV-727-M)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**   *

---

Before **BRORBY, EBEL** , and **HENRY** , Circuit Judges.

---

     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff appeals the denial of her February 1994 application for disability insurance benefits. She contends she has been disabled since October 14, 1993 due to arthritis in her hands, masses in her left hand, problems with her knees, and high blood pressure. An administrative law judge (ALJ) held a hearing on plaintiff's application in September 1995, shortly after which he issued a decision finding plaintiff not disabled. The ALJ concluded that plaintiff retained a residual functional capacity (RFC) for light work, limited by her ability to bend and stoop only occasionally and her need to work in a temperature-controlled environment. The ALJ determined that plaintiff could no longer do her past relevant work, which she had performed at the medium exertional level, but that she could perform various light and sedentary jobs that exist in significant numbers in the national economy. When the Appeals Council later denied plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. The district court affirmed the Commissioner's decision, and plaintiff now appeals.

Plaintiff raises two broad challenges on appeal: 1) neither the ALJ's credibility assessment nor his RFC determination was supported by substantial evidence; and 2) the testimony of the vocational expert (VE) was inadequate to support the ALJ's finding that plaintiff was not disabled. Our review of the Commissioner's decision is limited to determining whether the correct legal

standards were applied and whether the findings are supported by substantial evidence in the record viewed as a whole. *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

The record shows that in May 1993, plaintiff had out-patient surgery on her left thumb to remove some masses that turned out to be a giant-cell tumor. Dr. Clendedin, the hand surgeon, released plaintiff to return to work on June 14, and on July 14 he released her from his active medical care. Plaintiff returned to her job in the dietary department of a local hospital preparing food trays, a job she had held for the past thirteen years. Several months later, plaintiff developed a trigger finger of the left ring finger, for which she underwent out-patient surgery on October 14, 1993. Dr. Clendedin's notes reflect that the triggering resolved immediately during surgery. During plaintiff's follow-up visit on November 12, Dr. Clendedin advised her to be more aggressive in her finger exercises and he released her to return to work on November 22. Plaintiff did return to work, but she was terminated shortly thereafter. The ALJ found that plaintiff had not engaged in substantial gainful activity since October 14, her alleged onset date. The record does not reflect that plaintiff sought any further

treatment from Dr. Clendedin, nor do the treatment notes from the physicians plaintiff saw periodically at Morton Comprehensive Health Services (MCHS) reflect any complaints of hand problems after the October 1993 surgery.

The records from MCHS show that plaintiff had been taking Motrin, and occasionally Naprosyn, on and off since July 1990. The first complaint of knee pain, however, does not appear until February 7, 1994. Examination at that time revealed no swelling. Likewise, though plaintiff intermittently complained of knee pain thereafter, examination never revealed any swelling, tenderness, redness, or other clinical signs.

On April 6, 1994, Dr. Harris examined plaintiff at the agency's request. Plaintiff told Dr. Harris she was experiencing pain in her left hand and was having trouble walking because of pain in her knees. She was taking Motrin, as well as medications for her hypertension and for a skin rash. Examination revealed that plaintiff was 5' 3" tall and weighed 196 pounds. Her left hand had a motor strength of 3/5, compared with her right hand, which had a motor strength of 5/5. Her forearm strength appeared to be normal. Plaintiff had a full range of motion in her knees, but with some crepitation. She had some discomfort when her knees were extended beyond 160 degrees. Plaintiff also had bronchitis at the time, as well as "fatigue of unknown origin." Appellant's App., Vol. II at 141. Plaintiff later testified that she was feeling very sick the day of Dr. Harris's exam.

In September 1994, plaintiff began taking Ansaid for her knees, which she later reported helped the pain. In June 1996, plaintiff was in a car accident and suffered some temporary injuries to her chest. Examination at the time revealed a full range of motion in her knees and negative straight leg raises.

Plaintiff claims that her hand and knee problems produce disabling pain, and that the ALJ failed to follow the teachings of *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991), in assessing the credibility of her complaints of pain. Plaintiff also argues that the ALJ failed to link his credibility findings to substantial evidence in the record, as required by *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Our review of the record reveals otherwise.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). In evaluating the credibility of plaintiff's allegations of disabling pain, the ALJ considered the kinds of factors found to be appropriate in *Luna* and *Hargis*, and he recited what specific evidence he relied on in considering those factors, as required by *Kepler*. Plaintiff essentially disagrees with the weight the ALJ gave to the relevant factors. We, however, may not reweigh the evidence on appeal. The ALJ applied the correct legal standards in evaluating plaintiff's

subjective allegations of pain and his determination on this matter is supported by substantial evidence in the record.

Plaintiff also argues that the ALJ failed to develop the record concerning her abilities to sit, stand, walk, or lift. While the ALJ does have a responsibility "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised," *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993), "the claimant must in some fashion raise the issue sought to be developed, which on its face, must be substantial," *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (citation omitted). "Further, when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Id.*

Here, the ALJ took numerous steps to make sure the record was developed adequately for his review. At the beginning of the hearing, the ALJ noted what medical records were before him and asked plaintiff's counsel if there were any additional medical records he should consider, to which counsel replied in the negative. The ALJ then gave counsel an opportunity to make an opening statement. Thereafter, the ALJ asked plaintiff what problems she was having and how they prevented her from working. The ALJ also gave plaintiff's counsel an

opportunity to question her at length about the nature of her problems and resulting limitations. After counsel completed his questioning, the ALJ asked plaintiff if there were anything else she wanted him to know about her condition. Finally, the ALJ gave counsel an opportunity to make closing remarks at the conclusion of the hearing. In her testimony, plaintiff described various problems she had walking and sitting, but she did not mention having any trouble standing or lifting. Nor do plaintiff's medical records reflect any limitation in these latter two activities. Under the circumstances, we conclude the ALJ adequately developed the record consistent with the issues raised by plaintiff.

Plaintiff also argues that the ALJ's conclusion that she could do light or sedentary work, with the limitations noted earlier, is not supported by substantial evidence because the evidence established that plaintiff's pain would prevent her from performing the prolonged standing and other exertional requirements of light work on a sustained basis. We have already concluded that the ALJ properly evaluated plaintiff's allegations of disabling pain and determined that while she experienced some pain, it did not limit her ability to do light and sedentary work with the limitations found. Plaintiff merely seeks to substitute her evaluation of the evidence for that of the ALJ.

Finally, plaintiff challenges the ALJ's reliance on the VE's testimony in concluding there are other jobs plaintiff can perform that exist in significant

numbers in the national economy. The VE identified five categories of jobs that plaintiff could perform despite the limitations found by the ALJ: light, unskilled janitorial jobs; light, unskilled cashier jobs; sedentary, unskilled hand packager/packaging jobs; sedentary, unskilled telemarketing jobs; and sedentary, unskilled cashier jobs. Plaintiff takes issue with the ALJ's reliance on the janitorial and hand packaging jobs, arguing that the Dictionary of Occupational Titles (DOT) [1] provides that janitorial and hand/packager jobs are usually performed at the medium exertional level. Plaintiff also challenges the ALJ's reliance on the telemarketing jobs, arguing that the DOT indicates these jobs usually take one to three months to learn, which, plaintiff contends, is inconsistent with the definition of unskilled work provided in 20 C.F.R. § 404.1568. We need not consider these challenges, however, because even if these three categories of jobs were eliminated from consideration, the remaining light and sedentary cashier jobs would be sufficient to sustain the ALJ's decision. The VE testified, and the ALJ found, that there were 4,900 of these cashier jobs in Oklahoma and 1,050,000 of these jobs in the national economy. This clearly

---

[1]     U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th Ed. 1991).

represents a significant number of jobs that plaintiff can perform despite her limitations. [2]

We conclude that the ALJ applied the correct legal standards in evaluating plaintiff's application for benefits and that his decision is supported by substantial evidence in the record as a whole. Therefore, we AFFIRM the judgment of the United States District Court for the Northern District of Oklahoma.

Entered for the Court

Wade Brorby
Circuit Judge

---

[2] By comparison, the three occupations that plaintiff challenges, when combined, account for 3,460 jobs in Oklahoma and 212,000 jobs nationally.