Lester L. SIMS, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART,* Commissioner of Social Security Administration, Defendant–Appellee.

No. 01–5108.

United States Court of Appeals,
Tenth Circuit.

April 12, 2002.

---

* On November 9, 2001, Jo Anne B. Barnhart became the Commissioner of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Ms. Barnhart is substituted for Larry G. Massanari as the appellee in this action.

Before SEYMOUR, McKAY, and MURPHY, Circuit Judges.

### ORDER AND JUDGMENT **

MURPHY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Claimant Lester L. Sims appeals from an order of the district court affirming the Commissioner's decision denying his application for social security disability benefits. The district court concluded substantial evidence supported the administrative law judge's (ALJ's) finding that Mr. Sims was not disabled within the meaning of the Social Security Act because, despite his limitations, he was still able to perform work within the national economy. We affirm.

### I. Background

Mr. Sims filed his current application [1] for benefits on August 16, 1993, alleging disability beginning July 1, 1991, due to chronic back, neck, and leg pain, ankylosing spondylitis,[2] depression, anxiety, and personality disorders including paranoid schizophrenia, with a history of drug abuse. The Commissioner denied that application both initially and on reconsideration. Following a hearing, an ALJ issued a decision dated May 5, 1995, denying benefits. On review before the district court, the parties stipulated to a second hearing before a new ALJ, and the district court remanded the case to obtain medical source statements from claimant's treating physicians describing the functional limitations during the entire period at issue.

Following the second hearing, the new ALJ issued his decision denying benefits, and the Appeals Council and the district court both affirmed that decision. Mr. Sims has appealed, alleging that the ALJ

---

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. Mr. Sims filed three previous applications for disability benefits during 1985 and 1987.

Those applications were each based on an onset of disability date of November 25, 1985, and they were each denied.

2. Ankylosing Spondylitis is defined as arthritis of the spine, resembling rheumatoid arthritis. *See* Stedman's Medical Dictionary 1656 (26th ed.1995).

(1) failed to give appropriate weight to the opinion of Mr. Sims' treating physician; and (2) failed to determine the extent of Mr. Sims' pain in the absence of his narcotic medication.

## II. Standard of Review

The ALJ found Mr. Sims' impairments prevented him from performing his past relevant work as an assembly line worker, delivery driver, glass mold cleaner, and sandblaster. However, the ALJ concluded that, despite those limitations, Mr. Sims was capable of making an adjustment to work at other jobs that exist in the national economy. Thus, the ALJ found Mr. Sims not disabled at step five of the Commission's five-step process for determining disability. *See* 20 C.F.R. § 404.1520(f). While the burden of proving a prima facie case of disability at step one through four of that process is on the claimant, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given his age, education, and work experience. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988).

This court reviews the Commissioner's decision to determine whether her factual findings are supported by substantial evidence in light of the entire record, and to determine whether she applied the correct legal standards. *Hargis v. Sullivan,* 945 F.2d 1482, 1486 (10th Cir.1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994). In the course of our review, we may "neither reweigh the evidence nor substitute our judgment for that of the [Commissioner]." *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir.1991). Finally, we are further restricted in our review in this case based on the fact that Mr. Sims' insured status expired on March 31, 1993. Thus, the ALJ's inquiry was limited to determining whether Mr. Sims was disabled before that date, and our review of the ALJ's decision necessarily takes that limitation into consideration. *See Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1348–49 (10th Cir.1990) ("[T]he relevant analysis is whether the claimant was actually *disabled* prior to the expiration of [his] insured status.") (emphasis in original).

## III. Treating Physician's Opinion

Mr. Sims argues the ALJ improperly discounted the opinion of his treating physician, Dr. Shirley Welden, concerning his allegation of disability. Dr. Welden began seeing Mr. Sims in May of 1993. The opinion at issue was in the form of an August, 1997 residual functional capacity (RFC) assessment, made in response to the Commissioner's request for further medical source documentation after remand by the district court. In that RFC, Dr. Welden stated that Mr. Sims could not sit or stand for more than thirty minutes at one time or for more than two hours total during an eight-hour day. She stated that he could not walk more than one hour continuously and only two hours total in an entire day. Further, she stated that Mr. Sims could never bend, squat, crawl, climb or reach, and could never lift more than twenty pounds. She reported limitations to Mr. Sims' ability to use his feet repetitively, marked restrictions on his activities involving changes in temperature, vibrations, and driving, and total restrictions from activities involving unrestricted heights and moving machinery. Finally, she stated that the combination of his psychiatric and physical illnesses was the cause of his disability and that if his im-

pairment were only physical, she would encourage him to pursue retraining and further education.

■■■ Generally, the ALJ must give controlling weight to a treating physician's opinion concerning the nature and severity of a claimant's impairments, provided that opinion "is well-supported ... and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). However, we have said that even a treating physician's opinion that a claimant is totally disabled is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994). While it is proper for the ALJ to consider retrospective diagnoses or opinions concerning a claimant's impairments, those diagnoses or opinions must still be based on objective evidence of an actual disability prior to the expiration of his insured status. *See Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir.1991); *Potter*, 905 F.2d at 1348–49. In this case, the medical reports do not suggest that Mr. Sims was disabled prior to March 31, 1993.

In December 1985, Dr. Framjee, a treating physician, reported x-rays showing normal spine extension, leading to a diagnosis of only minimal back pain. On August 5, 1991, another treating physician, Dr. Truett, reported x-rays taken of Mr. Sims' lumbar spine and noted an old compression deformity involving the upper aspect of the body of L5 along with some minimal arthritic or degenerative changes.[3] On August 29, 1991, Dr. Truett examined Mr. Sims and noted a bulging lumbar disc and lumbar strain with osteoarthritis of the spine. However, he also reported that Mr. Sims was employed at the time, doing part-time work that allowed him the flexibility to sit and stand. Furthermore, Dr. Truett reported that Mr. Sims had no muscular tenderness, spasms or wasting, and walked without any limp. Dr. Truett's examinations in March 1992, September 1992, and May 1993, also include evaluations indicating that Mr. Sims was only partially disabled at the time.

Significantly, medical records obtained from Dr. Welden that are closer in time to the relevant period than her RFC assessment also demonstrate a less than disabling condition. Dr. Welden first saw Mr. Sims in May of 1993, when he complained of pain and depression. She prescribed medications for each complaint and ordered his old medical records. In June of that year she ordered an MRI of the lumbar area which revealed normal vertebral alignment and marrow signal, no spinal stenosis, a mild bulge at the L5 level and no herniation. In September of 1993, she described Mr. Sims as being "quite active" and his life as "excellent," albeit with some pain. In December of 1993, Dr. Welden described Dr. Truett's records as revealing "some" signs of lumbar disc disease and the June 1993 MRI as showing a condition that was nonsurgical and not severe. These comments are consistent with x-rays, taken only one month before Dr. Welden's RFC assessment, which showed only mild degenerative changes to Mr. Sims' lumbar spine, and all other aspects, normal.

■■■ Based on this objective medical evidence, the ALJ chose to rely on the testimony of an impartial medical expert, who concluded that Mr. Sims had, at best, a limiting, but not disabling pain-producing impairment. This evidence sufficiently

---

**3.** This particular medical record was part of the administrative record used in connection with one of Mr. Sims' prior applications and was specifically incorporated by reference into the current proceeding.

demonstrates that the ALJ was correct in his determination that Dr. Welden's opinion was neither supported by nor consistent with other substantial evidence. Therefore, the ALJ did not err in rejecting Dr. Welden's physical RFC made in August 1997.

■ Likewise, Dr. Welden's statement regarding Mr. Sims' mental impairment is inconsistent with the medical evidence concerning Mr. Sims' condition prior to March 31, 1993. Dr. Welden first diagnosed Mr. Sims with depression after her initial examination in May of 1993 and she started him on Paxil, an antidepressant drug. In June 1993, she reported that he was doing "much better" with his depression. In December 1993, she reported improvement in Mr. Sims' depression scale due to his continuation of Paxil. There is evidence of Mr. Sims' deteriorating mental condition over the next several years, and the ALJ specifically considered evidence of paranoid schizophrenia arising after the date Mr. Sims was last insured.[4] There is no evidence in the record, however, showing any disabling mental impairment during the period between July 1, 1991, and March 31, 1993. Because Dr. Welden was not a specialist in mental disorders and because her statement regarding Mr. Sims' "psychiatric illness" was not supported by objective mental evidence demonstrating any significant mental impairment during the relevant period, the ALJ relied on the opinion of Dr. Inbody, who, in December of 1993, found Mr. Sims suffered from depression, secondary to his physical condition, with a Global Assessment of Functioning (GAF) score of 65, showing only mild symptoms. Reliance upon Dr. Inbody's consultative opinion was appropriate under these circumstances. Thus, this court concludes that the ALJ did not err in rejecting Dr. Welden's reference to "psychiatric illness" for other, more consistent evidence of Mr. Sims' mental impairments.

## IV. Allegations of Pain

Mr. Sims' remaining claim is that the ALJ erred in his assessment of subjective pain. Specifically, relying on our decision in *Saleem v. Chater*, 86 F.3d 176 (10th Cir.1996), Mr. Sims argues that he should have been evaluated for pain in an unmedicated state, absent any drugs he took to relieve his symptoms of pain, anxiety, and depression. Alternatively, Mr. Sims argues the ALJ failed to address the side-effects of the drugs on his ability to function.

■ The district court correctly rejected Mr. Sims' first argument, concluding that *Saleem* imposes no requirement to assess a claimant's allegations of pain minus the addictive drugs. In *Saleem*, this court held, "the ALJ cannot discredit a claimant's assertions of disabling pain by relying on [his] use of medicines to which the medical evidence clearly indicates [he] is addicted, and which [he] should have long ago stopped taking, but which presently provide adequate pain relief." *Saleem*, 86 F.3d at 179–80. In the present case, the district court carefully listed the

4. In his reply brief, Mr. Sims relies heavily on a summary of psychological testing done by Dr. Gastorf dated December 27, 1993, to argue that Dr. Welden's RFC is consistent with other substantial evidence. Although that summary noted an impression or possibility of paranoid schizophrenia and passive aggressive or antisocial personality, it was discounted by the ALJ because it reflected a very short period of evaluation. We also note that the summary was also ambiguous in its findings concerning Mr. Sims' mental health, as it concluded "[m]alingering in order to claim mental illness is probable." Aplt.App., Vol. 3 at 469. In any event, that summary provides no evidence whatsoever as to Mr. Sims' mental condition prior to March 31, 1993.

evidence demonstrating that Mr. Sims was not addicted to his medications and that his doctors believed the drugs were beneficial to his medical condition. This court has reviewed the same evidence, and we conclude that the district court was correct in its conclusion that the ALJ did not err by not assessing Mr. Sims' allegations of pain absent his use of those drugs.

Likewise, this same evidence regarding Mr. Sims' drug regimen and its salutary effect on his medical condition convinces us that his alternative argument regarding the negative side-effects of those drugs is without merit. The record reveals only passing reference to medication side-effects; the vast majority of the medical record demonstrates Mr. Sims relied extensively on the prescribed medications to perform a variety of normal daily activities. This court agrees with the district court that the ALJ evaluated the evidence according to the proper legal standards, and we conclude that there is substantial evidence in the record to support the ALJ's decision that Mr. Sims' pain contributed to a limiting, but not disabling impairment during the relevant time period.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.