**Lilla M. BIRI, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 97–4091–RDR.**

United States District Court,
D. Kansas.

May 27, 1998.

Steven M. Tilton, Topeka, KS, for Plaintiff.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Plaintiff, Lilla M. Biri, brings this action pursuant to 42 U.S.C. § 405(g) for review of defendant's decision denying her application for disability insurance benefits. The court has reviewed the administrative record and the briefs of both sides. The court has determined that defendant's decision should be reversed.

### Factual Overview

Plaintiff's application for benefits alleges that her period of disability commenced on March 23, 1994. The application lists plaintiff's conditions as: chronic bicipital tendonitis, fibro-myalgia, chronic fatigue, and headaches. Plaintiff has also been diagnosed as having depression. Plaintiff was born in 1952 and was 44 years old at the time of the administrative hearing upon her application for benefits. She has a G.E.D. with some college credits. She worked as a records manager for the YWCA for thirteen years. This job involved sedentary and skilled labor. She quit the job on March 23, 1994 and has remained unemployed allegedly because of pain and fatigue.

Plaintiff's difficulties caused her to visit a doctor in 1992. Since that time a number of doctors and health professionals have examined plaintiff. The consensus of medical opinion appears to be that plaintiff suffers from fibromyalgia, chronic headaches, chronic pain particularly in the shoulder and neck area, fatigue and depression. There is also an indication in the record that plaintiff may have chronic fatigue syndrome. Plaintiff has taken numerous medications over time to improve her condition. She has also had physical therapy and other treatments.

### ALJ's decision

The Administrative Law Judge (ALJ) determined that plaintiff's condition or combination of conditions is not so physically or mentally limiting as to prevent her from doing her former work as a records keeper. His decision to deny plaintiff's application for benefits has been adopted by the defendant Commissioner of Social Security. The ALJ made the following findings in support of his decision. First, plaintiff "cannot be found to have a severe mental impairment" according to the Psychiatric Review Technique Form which the ALJ completed. Second, a doctor who examined plaintiff in 1995 opined that she was disabled from June 1, 1995 until December 31, 1995, "only a 6 month period" (sic) and plaintiff's condition has improved since that time. Third, the record does not contain other restrictions on plaintiff's physical activity or conclusions regarding disability. Fourth, plaintiff's complaints of physical limitations are not substantiated by medical evidence. Fifth, her complaints of depression and anxiety are related to her financial condition, not to a medical condition. Sixth, and finally, plaintiff's testimony regarding her daily activities does not support her claim for disability benefits.

### Standard of Review

Plaintiff has the burden of proving a disability which prevents her from engaging in her prior work for a continual period of twelve months. *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992). Then, the burden shifts to the defendant to prove that plaintiff retains the ability to do other work which exists in the national economy. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir. 1989). The court must determine whether the findings of defendant as to any fact are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The court is not

to reweigh the evidence or substitute its judgment for the defendant's. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994). Credibility determinations by the ALJ normally deserve deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1498 (10th Cir.1992). When an impairment is reasonably expected to cause some pain, allegations of disabling pain should be evaluated in light of all relevant evidence, including: levels of medication and their effectiveness; attempts to obtain relief; and the nature of daily activities. *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir.1991).

*Analysis*

■ Defendant's decision that plaintiff can return to her former work as a records clerk is not supported by substantial evidence. The ALJ's reasons for discounting the credibility of plaintiff's claim of disability are not persuasive upon a reasonable review of the record.

First, the ALJ commented, on the basis of his own evaluation of the record as reflected on the Psychiatric Review Technique Form, that plaintiff does not have a severe mental impairment. However, plaintiff has been diagnosed with depression and treated for depression since 1992. The record clearly indicates a loss of interest in activities, sleep disturbance, decreased energy, and difficulty concentrating or thinking. This is not reflected on the ALJ's form. The ALJ has marked "sporadic bouts of depression" on the form. However, the record indicates a persistent problem with depression, which at times has been labeled "major." See, e.g., Dr. Lentz's note of May 22, 1992, "Definite depression" at Tr. 172; Dr. Bickelhaupt's note of May 15, 1995, "depression, persisting ( & came after fibromyalgia)" at Tr. 212. The second reason the ALJ listed for doubting plaintiff's alleged limitations is that "a Dr. Mahtre, who had examined her and treated her, felt she was disabled from June 1, 1995 until December 31, 1995, only a 6 month period (sic)." Tr. at 14. The ALJ further stated, "Treatment and therapy thereafter seemed to have improved her condition in certain aspects for the periods of time after that report." *Id.* This is not con-

vincing to the court. Dr. Mahtre's records as a whole appear to support plaintiff's claim. In November 1995, Dr. Mahtre noted that plaintiff had a "history of severe fibromyalgia syndrome." Tr. at 243. He wrote the comment regarding plaintiff's "six-month period" of disability on July 5, 1995 in response to a request from plaintiff. Tr. at 247. Dr. Mahtre first saw plaintiff in April 1995. Therefore, it is not surprising that he did not give an opinion regarding her disability prior to that time. Also, contrary to the ALJ's comment, the records do not show that plaintiff's condition improved thereafter. Dr. Mahtre noted in April 1996:

> [Plaintiff] has more aches and pains, mostly in the right shoulder, right knee and right hip. She has not been sleeping well. She sleeps less than 5 hours a day.

Tr. 241. The same record indicates multiple trigger points and tender points as well as "generalized arthralgias, myalgia's due to fibromyalgia syndrome." *Id.* This is not significantly different from Dr. Mahtre's comments following his April 1995 visit with plaintiff. Tr. 223. The only difference is that headaches are not listed in the April 1996 notes.

The ALJ noted that the record does not contain evidence of restrictions on plaintiff's physical activity. Dr. Mahtre's note is some evidence of such restrictions. Furthermore, Michael Dreiling, Director of the Menninger Return to Work Center, stated in August 1994:

> [I]t is my opinion that after having reviewed the essential job tasks that this individual has performed in the past and when considering the amount of time and frequency with which she performed these tasks, it would appear that they would not be within her current vocational capacity. The comments of Dr. McKinney and Dr. Koprivica would suggest that she would have difficulty doing these type of tasks and most importantly would have to have special ergonomics provided to ensure [an] ideal work situation but would also have to be able to take a break every 35 to 40 minutes, which I don't believe is feasible or realistic in the competitive work place. I believe the loss is quite significant in terms

of percentage in removing all but two of her prior tasks, that she will experience a 83% loss in task performing capacity ... Tr. 104. While this statement may not be strictly medical evidence, it incorporates a review of medical information and renders an opinion that plaintiff could not do 83% of the tasks she performed at her last job. The ALJ does not address this opinion in his decision.

The fourth reason given by the ALJ for denying plaintiff's application is that her complaints of physical limitations are not substantiated by medical evidence. The ALJ notes that the record does not document chest pains, shortness of breath, nausea, vomiting, diarrhea, rectal bleeding or muscle weakness. Tr. 14. However, these are not symptoms of fibromyalgia. "The principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and ... multiple tender spots ..." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996). These symptoms *are* documented in the record, as is the diagnosis of fibromyalgia.

Next, the ALJ asserts that plaintiff's complaints about depression and anxiety are not severe and are related to financial, not medical, conditions. However, at times plaintiff's depression has been characterized as "major." For instance, plaintiff was treated on an inpatient basis for major depression in April 1995. Tr. 197. While the ALJ suggests that plaintiff's anxiety is connected to her financial situation, the root cause appears to be plaintiff's health. In the patient's history taken at the Orange County Community Hospital where plaintiff was treated for depression, the record states: "It all started with patient's health." Tr. 191. Later, the same record states: "Patient mentioned the physical problems as the main factor. Now, patient is also worrying about the finances." *Id.* Since plaintiff was treated for depression before she stopped working, the court does not believe anxiety over financial problems is plaintiff's main mental or emotional difficulty.

Finally, the ALJ contends that plaintiff's testimony regarding her daily activities does not support her claim for disability benefits. The court disagrees. Plaintiff testified: that she must lie down three times a day for one to two hours (Tr. 271–72); that she has difficulty grasping things (Tr. 272); that she cannot stand or sit for more than 15 to 30 minutes at a time (Tr. 272); that she cannot climb stairs without becoming dizzy and exhausted (Tr. 272–73); that she only drives short distances (Tr. 274); that she is forgetful (Tr. 274); and that she needs help doing housework and grocery shopping (Tr. 276–77). The court has also reviewed plaintiff's written descriptions of her daily activities. Tr. 81–82. Neither her written nor oral statements support a claim that she could return to her past employment.

Plaintiff's consistent work history prior to her date of alleged disability, her frequent visits to health professionals, and her use of medication, help corroborate plaintiff's complaints of pain and functional limitations. Defense counsel has made reference to plaintiff's social activities. Counsel also notes that plaintiff has shopped for groceries, cared for a grandson, and taken a boat ride. These activities, viewed in context, are not of such frequency and consistency that they offer substantial support for the ALJ's conclusions in this case. Defense counsel has also mentioned that the records indicate that plaintiff *desired* to work. This is not evidence that plaintiff can work; in fact, it may make plaintiff's claim of disability more believable. Cf., *Cavitt v. Schweiker*, 704 F.2d 1193, 1195 (10th Cir.1983) (ability to do sedentary work not shown by some household chores, absence of medication, applications for two jobs and desire to work on a regular basis).

Defense counsel also suggests that plaintiff actually quit her job because she felt the YWCA was not honest. The document counsel has referred to indicates in one part that plaintiff thought she was depressed because she worked 13 years for a Christian organization that was not honest. Tr. 193. It does not say that she quit the job for that reason. Moreover, the record indicates on the whole that plaintiff thought her medical problems were the source of her depression. Tr. 191.

■ For the reasons stated above, the court finds that substantial evidence does not support the conclusion that plaintiff is capable of returning to her former work. Since

her former work was sedentary, the lowest classification under the statute, it is appropriate to remand this case for an award of benefits. See *Vogt v. Chater*, 958 F.Supp. 537, 548 (D.Kan.1997) quoting, *Sisco v. U.S. Department of Health and Human Services*, 10 F.3d 739, 745–46 (10th Cir.1993).

It is therefore ordered that the Commissioner's decision denying disability benefits to plaintiff is reversed, and the case is remanded to the Commissioner for an immediate award of benefits.

IT IS SO ORDERED.