**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RODEL MIRANDA,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant-Appellee.

No. 04-1500
(D.C. No. 03-RB-1889 (MJW))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Rodel Miranda appeals from an order affirming the Commissioner's decision that he is not entitled to Social Security Supplemental Security Income benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We reverse and remand for further proceedings.

## *Background*

Mr. Miranda was born in 1969. He has an eleventh grade education. He last worked in 2000, leaving his jobs as a house painter and a carpet layer because he was increasingly uncomfortable around people and because he experienced back pain.

On September 12, 2001, Mr. Miranda applied for Supplemental Security Income benefits, alleging that he suffered from depression, back pain, hearing loss, and learning disability. Consulting clinical psychologist Dr. Brad Marten examined him in conjunction with his application. Dr. Marten diagnosed Mr. Miranda with several mental impairments, including panic disorder with agoraphobia; depressive disorder, not otherwise specified; developmental language disorder expressive type; developmental arithmetic disorder; and a personality disorder not otherwise specified with obsessive compulsive features, provisional. He assessed Mr. Miranda with a Global Assessment of Functioning (GAF) score of 45 at the time of the examination, and of 43 in the prior year.

After a hearing on March 13, 2003, the assigned administrative law judge (ALJ) found that Mr. Miranda had "borderline intellectual functioning and a combination of affective, anxiety-related, and personality disorders" which were considered severe, but not severe enough to meet or medically equal a listed impairment. Aplt. App. at 23-24. [1] The ALJ further found that Mr. Miranda retained the residual functional capacity (RFC) to "perform work with no physical exertional or nonexertional limitations; no dealing with the general public; minimal dealing with coworkers; minimal supervision; and no complex tasks (simple, rote, repetitive tasks with one or two-step instructions)." *Id.* at 26. The ALJ determined that Mr. Miranda did not have the capability to return to his past relevant work, but that his RFC allowed him to perform other jobs available in the regional and national economy, and he denied the application. The Appeals Council and the district court affirmed the ALJ's decision. Mr. Miranda appeals.

---

[1] The ALJ also found that the medical record did not support a finding of a severe back impairment or a severe hearing impairment. Mr. Miranda does not challenge these findings on appeal. Instead he contends that once he had the benefit of counsel, he came to understand that his pain was not disabling under the applicable regulations, and so at the hearing, he relied solely on his mental impairments to establish his eligibility for benefits.

*Discussion*

I

"We review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). "We must examine the record closely to determine whether substantial evidence supports the [Commissioner's] determination. Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (further citation omitted). "In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

II

Mr. Miranda first argues that the ALJ did not give the proper weight to Dr. Marten's opinion. The ALJ afforded Dr. Marten's opinion of Mr. Miranda's global functioning "little weight" because "he based this conclusion primarily on the claimant's subjective reporting, which Dr. Marten repeatedly noted was inconsistent." Aplt. App. at 23. The ALJ did not specify what weight he gave the remainder of Dr. Marten's opinion, but he did state that he gave greater weight to

-4-

the opinion of a state agency physician, Dr. Robin Pedowitz, who reviewed the file (including Dr. Marten's opinion) and opined without examining Mr. Miranda. The ALJ gave no weight to the opinion of Mark Warwick, M.D., who prepared a standardized form supporting Mr. Miranda's application for state benefits, because his opinion was not supported by objective medical signs and findings and because Dr. Warwick's conclusion was "inconsistent with all of the other substantial evidence of record." *Id.* at 22.

Generally, the Social Security Administration gives more weight to the opinion of an examining physician than to that of a non-examining physician. 20 C.F.R. § 416.927(d)(1); *Winfrey*, 92 F.3d at 1022; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."). In this case, Dr. Marten and Dr. Warwick were the only examining medical sources who provided evidence about Mr. Miranda's mental impairments. The ALJ rejected their opinions, however, in favor of the opinion of Dr. Pedowitz, a non-examining physician.

Our review indicates that Dr. Marten and Dr. Pedowitz did not substantially differ in their diagnoses. Both found that Mr. Miranda suffers from multiple mental impairments, but they differed in their assessments of the limits these

impairments placed on Mr. Miranda's functional capacity. Dr. Pedowitz was of the opinion that Mr. Miranda's functional capacity was not as limited as Dr. Marten believed it to be. The ALJ, however, did not explain adequately why Dr. Pedowitz's opinion deserved greater weight than Dr. Marten's opinion. Notably, the ALJ did not explain how he evaluated Dr. Marten's opinion other than the GAF score. He apparently did adopt portions of Dr. Marten's opinion, but an ALJ is not allowed to "pick and choose" from a medical report to use only those portions favorable to his decision, *Robinson*, 366 F.3d at 1083.

Further, it is disturbing that the ALJ "second-guessed" Dr. Marten's diagnosis by discounting his assessment primarily because it was based on Mr. Miranda's sometimes inconsistent, subjective statements. The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. Dr. Marten's opinion indicates he was fully aware of inconsistencies in Mr. Miranda's statements, and he rendered his opinion in light of that knowledge. The ALJ's approach impermissibly put him in the position of judging a medical professional on the assessment of medical data, in this case Mr. Miranda's statements. It is not the ALJ's prerogative to substitute his own judgment for that of Dr. Marten. *See Winfrey*, 92 F.3d at 1022. Moreover, it would appear that Dr. Pedowitz's opinion, which relied on Dr. Marten's opinion, would suffer the same infirmity, thus further undermining the ALJ's analysis.

-6-

We conclude that these errors require remand for further consideration and weighing of the medical evidence using the proper legal standards.

III

Mr. Miranda also challenges the ALJ's determination that he was not a credible witness, contending on appeal that there is no substantial evidence supporting this finding. While generally we defer to an ALJ's factual findings, including an ALJ's evaluation of credibility, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted; alteration in original). Here, the ALJ gave four reasons for finding Mr. Miranda not credible: (1) the medical record did not substantiate his claims of back pain; (2) he was not in treatment with any mental health professional; (3) his activities of daily living were not significantly limited by back pain or by mental impairments; and (4) Dr. Marten noted numerous inconsistencies in Mr. Miranda's statements. A close review of each of these reasons, however, reveals little support for the ALJ's credibility determination.

Mr. Miranda contends on appeal that, by the time of his hearing, he had determined that the back pain he experienced was not sufficient to qualify as a disabling impairment. Consequently, he alleges that his claim, as presented at the hearing, focused on his mental impairments. The ALJ, however, was justified in

-7-

processing Mr. Miranda's claim as one including allegations of back pain, given that references to back pain appear repeatedly in the written submissions and Mr. Miranda never withdrew back pain as a basis for his claim. Moreover, the ALJ may have been justified in discounting Mr. Miranda's credibility based on the lack of medical evidence of a back problem. *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (reiterating that "the consistency or compatibility of nonmedical testimony with objective medical evidence" is one factor to consider when evaluating the credibility of pain testimony); *but see* 20 C.F.R. § 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements.").

As for the ALJ's second reason, the ALJ's finding that Mr. Miranda had not sought treatment flatly contradicted Mr. Miranda's testimony at the hearing that he had begun seeing a therapist. But even if the ALJ were correct in asserting that Mr. Miranda had not pursued treatment, his bald statement alone is not sufficient to justify discounting Mr. Miranda's credibility. Mr. Miranda testified that he could not afford treatment, which may be a legitimate reason for his failure to seek treatment. *See Threet v. Barnhart*, 353 F.3d 1185, 1190-91 n.7 (10th Cir. 2003); *Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993).

"[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7 (1996). There is no indication that the ALJ performed the required analysis in this case.

Turning to the ALJ's third reason for discounting Mr. Miranda's credibility, that Mr. Miranda did not experience significant limitations on his activities of daily living, the ALJ noted that Mr. Miranda stays in his room, showers, does some housecleaning (though he never completes it), draws, listens to music, reads, and washes dishes. But importantly, the ALJ did not address in any specificity the testimony of Mr. Miranda and his mother describing Mr. Miranda's curtailment of virtually all activity outside of his apartment. While he perfunctorily acknowledged the testimony about Mr. Miranda's reluctance to leave his apartment, the ALJ focused almost entirely on the various activities Mr. Miranda reported being able to do while inside his apartment. A restriction on leaving one's residence might be a potentially significant restriction on activities of daily living. Under these circumstances, the ALJ should have addressed this evidence; while he is not required to discuss every piece of evidence in the record, the ALJ "must discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects."
*Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

Finally, the ALJ noted that Dr. Marten's report identified several inconsistencies in Mr. Miranda's statements. We acknowledge that a claimant's credibility may be adversely impacted where the claimant's statements to a medical source are inconsistent with other statements made in connection with the claim. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *5. But there is no indication that the information ultimately given to Dr. Marten contradicted Mr. Miranda's testimony at the hearing. Further, as the ALJ was not present during the consultation with Dr. Marten, he necessarily was unaware of the context of the questions and the alleged inconsistencies. Under these circumstances, we do not believe that the inconsistencies constitute substantial evidence to support the ALJ's credibility evaluation.

While there may be some reason to doubt Mr. Miranda's credibility, this court does not weigh the evidence. The ALJ's legal errors require remand for consideration of Mr. Miranda's credibility using the proper standards.

IV

Mr. Miranda argues that the first hypothetical question posed to the VE does not constitute substantial evidence supporting the ALJ's decision. He indicates that the second hypothetical question, which added a limitation of a

need to isolate from contact from other individuals, was more appropriate. We agree with Mr. Miranda that the first hypothetical was inappropriate, but on a different ground.

We note that in the ALJ's step-three discussion of why Mr. Miranda did not meet the requirements of a listing for his mental impairments, he stated that "[m]oderate difficulties in maintaining concentration, persistence, or pace are suggested by the consultative psychological examination." Aplt. App. at 24; *see also id.* at 125 (Dr. Pedowitz finding moderate to marked limitations on Mr. Miranda's ability "to maintain attention and concentration for extended periods"); *id.* at 126 (Dr. Pedowitz noting moderate to marked limitations on Mr. Miranda's ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace"); *id.* at 127 (Dr. Pedowitz stating Mr. Miranda's low self-image would "likely affect his ability to focus & sustain & perform tasks"). But despite his remarks in the listing discussion, and his accordance of greater weight to Dr. Pedowitz's report, the ALJ did not further mention concentration, persistence, or pace– characteristics that would appear to be crucial factors in the type of work that the ALJ believed Mr. Miranda was capable of doing (one- or two-step jobs that require minimal supervision or interaction with co-workers). It does not appear that the ALJ ever made a firm determination regarding restrictions in these

-11-

areas, and no such restrictions were included in the RFC or in the first hypothetical question to the VE.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (brackets and quotation omitted). We have held that, where the record supported some limitation on particular functions, "the ALJ's failure to include in his hypothetical inquiry to the vocational expert *any* limitation in this regard violated the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (footnote omitted).

Given that he found moderate difficulties in the areas of concentration, persistence, or pace,[2] the ALJ erred in not further addressing these factors in assessing Mr. Miranda's RFC and in posing his hypothetical questions to the VE. These omissions should be remedied on remand.

---

[2]    We also note that Dr. Pedowitz indicated there may be marked, rather than moderate, limitations in areas affecting concentration, persistence, or pace. The ALJ also omitted any explanation why he rejected these findings.

V

Finally, Mr. Miranda requests that this court direct that a different ALJ hear his case on remand.  As we have stated in other contexts, we will direct reassignment of a case only "in the most unusual and exceptional circumstances." *United States v. Roberts*, 88 F.3d 872, 885 (10th Cir. 1996).  We do not believe that the circumstances here rise to that level, and consequently we decline to request that a different ALJ be assigned to this matter.

### *Conclusion*

The judgment of the district court is REVERSED, and the case is REMANDED to the district court with instructions to remand to the Commissioner for further proceedings.

Hartz, J., concurs in the result.

Entered for the Court


Monroe G. McKay
Circuit Judge

-13-